1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

11

| DUSTIN DANNEBAUM, | CASE NO. 14cv454-LAB (WVG) |
|---|---|

12

Plaintiff,   **ORDER ON MOTION FOR SUMMARY JUDGMENT**

vs.

13

COUNTY OF SAN DIEGO, et al.,

14

Defendants.

15
16

17    This lawsuit arises out of a physical altercation between Dustin Dannebaum and

18   correctional officers at the George Bailey Detention Facility.  (Docket no. 1 at ¶¶ 2–9.)  The

19   remaining defendants—the County of San Diego and Deputy Sam Knight—have moved for

20   summary judgment.  (Docket no. 28.)

21   **I.     Factual Background**

22    Dannebaum was being held at the George Bailey Detention Facility while he was

23   awaiting trial on a July 25, 2011 felony complaint.  (Docket no. 29 at ¶ 5.)  At the time he was

24   also on parole for a prior conviction.  (*Id.* at ¶ 1.)  The deputies approached Dannebaum's

25   cell to deliver a meal, and Deputy Knight placed his food trays on the ground.  (*Id.* at ¶¶ 8–9.)

26   The parties' stories diverge on what happened after that.  According to Deputy Knight,

27   Dannebaum "appeared agitated," responded to Deputy Knight's warnings with profanity,

28   suggested that they take their dispute "to the rec yard," got into a fighting stance, "tensed

up," and when Deputy Knight attempted to restrain him, reached his hands out towards Knight.  (Docket no. 28 at 1; Docket no. 28-2, Exhibit B, at 24–33.)  But according to Dannebaum, Deputy Knight was the one acting aggressively and cussing, and began beating Dannebaum up when he looked down at his food tray.  (Docket no. 28-2, Exhibit A, at 39–40; Docket no. 30-2, Exhibit 2, at 56.)  Dannebaum also maintains that the deputies created the need for force by deviating from the standard protocol of handing prisoners food while they stayed in the cell.  (Docket no. 30 at 9.)  What is not disputed is that the altercation resulted in significant injuries to Dannebaum.  (Docket no. 29 at ¶ 10 (stipulating that "[o]n February 29, 2012, Plaintiff Dannebaum was taken to UCSD Medical Center where he was treated for a puncture wound to the cheek, laceration of the lower lip, orbital fractures and bilateral nose fractures.").)  The parties also agree that Dannebaum had a history of getting into fights at County jails.  (*Id.* at ¶ 6 (stipulating that he "had been involved [in] four fights with other inmates while incarcerated at various County jails.").)

Dannebaum sued the County of San Diego and Deputy Knight under 42 U.S.C. § 1983 for excessive force and cruel and unusual punishment.  (Docket no. 1; Docket no. 36.)  Dannebaum stipulated to the dismissal of his second cause of action, so only his excessive force claim remains.  (Docket no. 28-2, Exhibit A, at 5–6.)  The defendants' summary judgment motion argues: (1) Dannebaum's claims against the County fail because he hasn't established liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); (2) his excessive force claim fails because he hasn't established "unnecessary and wanton infliction of pain"; and (3) Deputy Knight is entitled to qualified immunity.  (Docket no. 28.)

**II.   Legal Standard**

Summary judgment is appropriate where the evidence shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of

14cv454

material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence are drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986). Where the moving party doesn't bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

If the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

## III. Discussion

### A. Municipal Liability

A municipality is liable under 42 U.S.C. § 1983 if it maintains a policy or custom that results in a violation of plaintiff's constitutional rights. *Monell*, 436 U.S. at 690-91.

> There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks omitted). Dannebaum proceeds under the third theory, arguing that the County is liable under *Monell* because it ratified the deputies' conduct by failing to discipline them. (Docket no. 30 at 4–6.) But "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808,

823–24 (1985).  And "a single failure to discipline is insufficient to make out a claim for liability under 422 U.S.C. § 1983." *Wallace v. City of Santa Rosa*, 2013 WL 4675354, at *2 (N.D. Cal. Aug. 30, 2013) (collecting cases).  Since Dannebaum bases his *Monell* claim on a single failure to discipline, he doesn't state a viable claim against the County of San Diego.

## B.   Excessive Force

### 1.   Appropriate Standard

The Fourth Amendment's standard governs § 1983 claims based on excessive force during the "arrest, investigatory stop, or other 'seizure' of a free citizen." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Post-arraignment detainees are entitled to the protections of the Fourteenth Amendment's Substantive Due Process Clause.  *Id.* at 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–39 (1979)).  And "[a]fter conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where the deliberate use of force is challenged as excessive and unjustified." *Id.* (internal quotation marks and ellipses omitted).  Since the Eighth Amendment standard permits punishment as long as it's not cruel and unusual while the Fourteenth Amendment standard prohibits all punishment, the latter is "more protective." *Bell*, 441 U.S. at 535 n.16 (1979); *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir.1987).

Since Dannebaum was both a parolee and a pretrial detainee at the time of the altercation, there's a question regarding which standard applies to this case.  Courts are split on whether the Eighth Amendment standard applies.  Some courts have held that it does.  *See Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993); *Leialoha v. MacDonald*, 2008 WL 2736020, at *7 (D. Haw. July 11, 2008).  *Rankin* reasoned that the Eighth Amendment applied because the deputy's "force was applied in an effort to preserve institutional security" and "[i]t is impractical to draw a line between convicted prisoners and pretrial detainees for the purpose of maintaining jail security." 5 F.3d at 106.  In *Leialoha*, a parolee was arrested for a parole violation and then was killed as he tried to escape while being transported to a correctional facility.  2008 WL 2736020, at *2–3.  The court held that the Eighth Amendment

/ / /

1    applied because, as a parolee, the plaintiff was still serving his sentence as a convicted
2    felon. *Id.* at *7.

3           Others courts have declined to apply the Eighth Amendment when faced with
4    analogous facts. *Turner v. White*, 443 F. Supp. 2d 288, 294 (E.D.N.Y. 2005); *Towsley v.*
5    *Frank*, 2010 WL 5394837, at *6-7 (D. Vt. Dec. 28, 2010). In *Turner*, the court faced a
6    question of whether to apply the Fourth Amendment standard or the Eighth Amendment
7    standard where officers allegedly used excessive force when arresting a parolee for a new
8    offense. 443 F. Supp. 2d at 294–95. Because the "the excessive force was allegedly
9    applied by officers in connection not with plaintiff's conviction, but rather with some new
10   offense or violation they believed had been committed," the court concluded that the Eighth
11   Amendment shouldn't apply. *Id.* It reasoned that "[j]ust because an individual has been
12   convicted of a crime in the past and is on parole does not deprive him of his Fourth
13   Amendment constitutional right to be free from excessive force if arrested on another crime."
14   *Id*. at 294.

15          The Court finds the reasoning of *Turner* more persuasive than that of *Rankin* and
16   *Leialoha*. Where a parolee is incarcerated *because* of a parole violation, the Court can see
17   reason to apply the Eighth Amendment standard. But where the parolee's incarceration is
18   based on new charges that are unrelated to his prior conviction or a violation of his parole
19   terms, he's entitled to the Fourteenth Amendment's more protective standard. Dannebaum's
20   incarceration had less to do with his prior conviction or his status as a parolee, and more to
21   do with the new separate crime for which he was being held. Because he was detained for
22   a crime for which he hadn't been convicted, the Court concludes that he retains his rights
23   under the Fourteenth Amendment's Substantive Due Process Clause. His excessive force
24   claim will be reviewed under that standard.

25          **2.    Fourteenth Amendment Analysis**

26          Officers can't use excessive force but may use a reasonable level of force judged
27   from the perspective of a reasonable officer on the scene, not with the 20/20 vision of
28   hindsight. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The Court considers four

factors in resolving a due process claim alleging excessive force: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. *White v. Roper*, 901 F.2d 1501, 1507 (9th Cir. 1990).

The defendants' motion essentially contends that their facts are more persuasive than Dannebaum's. But that's not a proper inquiry at the summary judgment stage. If a jury believes Dannebaum's account, it could reasonably conclude that force was not needed, or that the force used was disproportionate to the need for force, or that Deputy Knight created rather than tempered institutional discord. Because there's a genuine dispute of material facts, Deputy Knight's motion for summary judgment on Dannebaum's excessive force claim fails.

## C.    Qualified Immunity

Qualified immunity shields government officials, including law enforcement officers, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). Qualified immunity protects government officials from lawsuits over errors made while reasonably performing their duties, whether resulting from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Granting summary judgment on qualified immunity involves a two-part inquiry. *Id.* at 232. First the court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled on other grounds by *Pearson*, 555 U.S. at 241. "Second . . . the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232.

/ / /

14cv454

1    As explained above, Dannebaum's allegations could support a finding of excessive
2  force.   And a jury could conclude that a reasonable officer would have known that an
3  unprovoked attack on a prisoner was unlawful.   Deputy Knight's motion for summary
4  judgment on qualified immunity grounds fails.

5  **IV.    Conclusion**

6    The defendants' motion for summary judgment is **GRANTED IN PART AND DENIED**
7  **IN PART**.  The remaining claim against the County of San Diego is dismissed.  The claim
8  against Deputy Knight is not.

9    **IT IS SO ORDERED**.

10  DATED:  May 17, 2016

11

12  **HONORABLE LARRY ALAN BURNS**
     United States District Judge

- 7 -

14cv454